May it please the court, Davina Chan on behalf of Lorenzo Espinoza who is present today in court. I'd like to reserve two minutes for rebuttal. Mr. Espinoza's 2013 sentencing hearing was replete with error. Sorry, how much for a rebuttal? Two minutes. Oh, thank you. His appeal raises eight procedural sentencing errors, a challenge to the substantive reasonableness of his sentence, and a request for reassignment. Today I would like to address why the erroneous loss calculation requires reversal, to argue for the need for reassignment on remand, and to explain why the rule adjustment cannot be affirmed. First, the error in the loss calculation alone requires reversal. The government has conceded that the district court erred in its loss calculation, so it's undisputed that the loss associated with the 12 properties calls for at most a nine level increase. This error, even standing alone, requires reversal. Well, so are you, well, the district court's determination that the sentencing guideline on low level was 17, but a minimum of 15? Yes. And then, but I guess the correct guideline is 16? I believe the correct guideline is without the role adjustment, so it would just be the original, which was 13. All right, but the government concedes that it would be 16? Yes, at most 16. Okay, so if, let's just take those facts. If the district court said it was between 15 and 17, and the government's willing to concede that it was 16, if we agreed that it was 16, would you then agree that it would be harmless error to give, in light of U.S., the munos camarena? No, I would not agree to that. U.S. versus munos camarena is a case in which the judge actually did say, I would give the same sentence regardless of what the guideline calculation was, and this court reversed, saying, that's not sufficient. You need to start with the correct guideline range and explain in each instance. And the court note that the government sites in munos camarena has never been followed. In fact, this court has never affirmed a guideline on harmless error where the calculation was incorrect. So the facts of munos camarena are quite similar to the facts of this case. In that case, the court gave a above guideline sentence. It turned out that his guideline calculation was wrong. The government argued, it doesn't matter because the judge said, even if the guideline calculation was this other figure, I would still give the same sentence, and this court held that the error was not harmless. All right, you've been here once before and back, right? I have. I don't know if you have, but your client has. That's correct. And so in the meantime, when it went back, originally the district judge had felt that he was constrained by, the district court felt it was constrained by the holding in and then decided, well, that the district court said, well, I was wrong about that. And then when it had made another finding of an aggravated rule enhancement, correct? Yes, but it was an incorrect finding. I mean, the irreducible requirement, whether you cite Quigley, the court cited Avila Varela, or the case I signed, Whitney Harper, the irreducible requirement, reducible requirement for a rule enhancement is that you prove that the defendant had control over somebody. In this case, the record does not establish that Mr. Espinoza had control over anybody. He seemed to, circumstantially, I would have to disagree with you there. I mean, he seemed to be, he was up in everything. Yes, he was up in everything, and in Whitney, the facts of the case were that the defendant, Mr. Whitney, was a IRS fraudster, and he was in jail, and he and a bunch of other people in jail committed fraud against the IRS. The district court imposed a rule enhancement because it said he was the guy, he's the guy who knew how to do it, and this court reversed because he was not in control of anyone. Now, the allegations that he was in control are allegations that Mr. Espinoza has disputed from the very beginning of this case. They were omitted from the factual basis of his plea agreement. He objected to the allegations in the PSR. He objected to the government allegations in their papers, and so the court held a lengthy hearing to sort out all these allegations, and after this lengthy hearing to sort out all the allegations, the district court rejected the rule enhancement. The district court said, it's too messy, this is an unsavory process, I'm just going to sentence him based on what he admitted, and he never admitted the rule enhancement. So, it came up on appeal, it went back down, and the district court basically wanted to narrow the gap between the guidelines and the five-year sentence that the court was going to impose. Are you saying that he had to admit the rule enhancement to be sentenced? No, I'm saying that the district court refused to believe any of the allegations other than the ones he admitted. The district court held a hearing, and the government's main witness at the hearing was Pedro Rodriguez Dominguez. His real name is Pedro Dominguez. And Pedro Dominguez is the one who said, oh yeah, Lorenzo Espinosa was in charge of everything. But the interesting thing about Pedro Dominguez is he lied about everything. He said, for instance, when asked about the witness Carlos Robles, you know, that he actually pleaded guilty to a money laundering in relation to Carlos Robles. He said he didn't know Carlos Robles. He didn't even know who he was. When Carlos Robles testified, he said, yes, I wanted to buy some property, and I knew Pedro Dominguez's brother. So, I hooked up with Pedro Dominguez. We negotiated it. He was in charge. I saw people working for him. And that's when the district judge aborted the hearing. The district judge said, what's going on here? They asked the government, are you saying that this witness, Mr. Robles, is lying? And the government said no. So, at that point, the district court decided this was too much of a mess. I'm just going to rely on. Well, the district court found an easier way to do it, but then the Ninth Circuit said, no, you need to, you know, you need to go back. But the district court didn't make findings whether he was a liar or not a liar. He just said, okay, I'm just going to take what he admits and I'm going to do it based on that. And, you know, admittedly, I mean, if you've ever been a judge, judges do kind of get figures in their head about what they think something's worth. And it seems that he was kind of at 60 months. Right. And if we affirm a sentence because the judge has a figure in his head that 60 months is the correct, then we will contravene this court's... Well, if there's no way to get there legally, yes. But if there's a way to get there legally... Right. But the district judge needs to get there legally. He needs to calculate the guidelines according to real facts. In this case, the real facts he came up with were PSRs of other defendants, which, from other judges in other courtrooms, which the defendant never had an opportunity to see. Did you object? Did the person sitting in your place object in the lower court? Not object, but... So it's plain error, right? Yes, it's plain error. But it's absolutely plain error for a district court to rely on information which is confidential and the defendant and his lawyer have not even had an opportunity to look at. The other thing... Counsel, when did the district judge announce that he was looking at the PSI from other defendants? At the beginning of the 2013 sentencing hearing. He hadn't given anyone the opportunity. What's interesting about that is that the defendant had, in 2010, objected to the allegations of other defendants, and the district court said, okay, I'm not going to consider those. So the new information the district court had was the PSRs of those very same defendants that the judge said he wasn't going to consider the allegations of. I see that I'm down to less than two minutes. If I could reserve the rest of my time for rebuttal. Thank you. May it please the court, Devin Myers on behalf of the United States. I'd like to start with the guideline calculation here. Everybody agreed that it was a base offense level of 13, and a two-level reduction for acceptance and responsibility, resulting in a total offense level of 13. And the defense counsel said at the sentencing hearing, and that's at ER3, we don't dispute the guideline range that was found by the court. Then the district judge imposed a four-level enhancement based on the defendant's role, and that's when the district judge said, I find the offense level to be 17, but at the least 15. And that was an error that nobody discovered until appeal. The defendant didn't object to it. The government didn't notice it. It was something that happened when we were going back over the record in preparation for appeal. And why that matters is because the district judge said, I find the offense level to be 17, but at the least 15, and imposed a 60-month sentence. Therefore, the defendant has to show that the district judge would have imposed a different sentence if he had correctly calculated the guideline of 16. But knowing that he had contemplated an offense level of 15 and still imposed a sentence of 60 months, there can be no showing of error here. So basically, it's pretty clear that the district court wanted to give him 60 months. That somewhere in that sense of fairness, or whatever judges do, this is worth five years, and I'm going to get there. Well, I think the district judge... Because it was 60 months before, and then it came back and said, you didn't give your reasons enough, or whatever, right? Yes, Your Honor. During the remand order, this court held that the district judge failed to give enough insight on the record to his thinking as to why he imposed the 60-month sentence. And here, the district judge did give sufficient findings as to why he did that under the 3553A factors, and that's at ER 15 through 17. And there he talked about the loss to the government, that it was the HUD, a vital government organization that was defrauded, which is devoted to helping low-income people secure housing, that there were a number of people involved in the scheme, and that the guideline calculation grouped three distinct crimes. Therefore, the offense level didn't reflect the seriousness of the defendant's crimes. And so, based on the 3553A factors and the district judge's thorough analysis of what the defendant did, that's why he imposed the 60-month sentence. And under Lee, that should be sufficient for a finding, given that the district judge did that fulsome analysis. I'm hearing counsel for Espinoza arguing that because in the first hearing, the district judge took an easier route, as it were, and said, okay, I just don't want to wade through all of this and decide who I believe and don't believe. I'm just going to take the defendant, what he's admitted, and that's how I'm going to calculate the loss. So when it comes back, is the district court hamstrung with what the district court did the first time? No, Your Honor. This was a completely new sentencing, and under Matthews, the district judge could consider everything in the record. And importantly, to the conduct that the defendant admitted to, in the plea agreement, he admitted to a restitution amount of approximately $2.1 million and a loss amount of greater than $1.5 million. So the defendant had actually admitted to worse conduct than he was able to sort of admit to later, involving the 12 properties and the $454,000 loss. Regarding the district judge's review of the pre-sentence reports of the co-defendants, here the district judge, for whatever reason, wasn't assigned all of the co-defendants, and it's not clear from the record why that was. But the district judge made an effort to put himself in the same position that he would have been if he were the sentencing judge. Most district judges review the pre-sentence reports of all the co-defendants, and that's how the process usually works. And importantly, this was an issue that the defense put into the record, and they raised that in connection with the first sentencing hearing, and that's they brought up the sentence of the co-defendants, it came up again in the bond hearing, where the defense counsel again raised the sentences of the co-defendants, and then it came up again in this court's remand order, that there could be sentencing disparity that the district judge needed to look at. So what the district judge did is he put himself in the same position that he would have if he were sentencing all the co-defendants. No, the sentencing guidelines are harsh. And here's a sentence that was more than twice the guideline range, and it went back. And there were problems at the first sentencing hearing, where confidential information that was in the other pre-sentence reports was considered by the judge, and that fact wasn't disclosed to the defendant. Am I right on that? At the first sentencing hearing, Your Honor, or the second one? I believe it's at the second one that the... You're not supposed to do that, are you? Well, notably, the district judge was... Pardon? Yeah, let me... Lucy, can we adjust the microphone out here? Just ask back in the audience, is this microphone clear when it speaks? Okay. Maybe it's the distance between us. I'll work to speak up, Your Honor. The district judge did disclose at the sentencing hearing, the second sentencing hearing, the facts that he relied upon based on the co-defendants' PSRs. And that was that John Campos was just a notary, that Dolores Valdivia helped forge documents, that Esperanza Espinoza, who was notably a defendant who was before the sentencing judge, that she worked under the direction of the defendant, and that it was the defendant who profited from the scheme. And also, that it was Pedro Rodriguez, who had an 11th grade education, who ran a home graphics business, and wasn't terribly sophisticated, and so the district judge did disclose the facts that he relied upon in the record. The defendant didn't object. The defendant didn't ask for a continuance. And those facts are consistent with the testimony of Pedro Rodriguez prior to the first sentencing hearing, and are consistent with the 302s that the government submitted in the record. And notably, in Ms. Esperanza's plea agreement, she admitted to working at the direction of the defendant. So, the district judge did disclose those facts, Your Honor, and they were consistent. And under Christensen, what the defendant has to show is that the district judge relied on a clearly erroneous fact. And that hasn't been shown here, because the facts that the district judge relied on were consistent and were correct. Regarding the defendant's objections to the PSR here, the government submits that those were not factual objections that the defendant made. Regarding the number of straw buyers, the defendant's objection, and that's at ER 134... So when you said factual objections that the defendant made, did you mean the district court? No, Your Honor. The government submits that the defendant failed to make a specific factual objection to the PSR that would invoke Rule 32. And that's because the defendant's objection to the straw buyer was vague. It generally said, oh, I'm only admitting to one straw buyer. There were paragraphs in the PSR, paragraphs 47 through 55, that spoke about two properties and four straw buyers that were properties that the defendant was involved with, and the defendant didn't make objections to those paragraphs. To the extent, however, that the court finds that the defendant did make a specific factual objection, the district judge overruled that, and there was plenty of support for those findings in the record. For example, the plea agreement itself mentioned straw buyers. That was conduct that the defendant admitted to. Furthermore, the government, at the first sentencing hearing, submitted papers for two of the 12 properties that the defendant did admit to, and that those involved straw buyers. So there was ample support in the record for showing that there were straw buyers. I see that I'm out of time. Unless the court has more questions, I'll submit on the papers. When is, when, well, how long has Mr. Espinoza been in prison? 36 months, Your Honor. He's out on bond at the moment. Would you say? 36 months, Your Honor. He's on bond right now. He's on bond right now. Thank you. All right, thank you. Thank you. I believe Mr. Espinoza was in prison for 40 months before he was released on bail pending appeal, released by this court. I want to address Judge Callahan's characterization of what Judge Wilson did as taking the easier route. Rule 32 requires a court to make a decision when a defendant makes an objection. And the two choices that the court can choose, one is to resolve the objection, and the other is to decide that it won't rely on the facts that the defendant objected to. In this case, the court decided it would not rely on the facts that the defendant objected to and that it would sentence him just based on what he admitted. The case went up on appeal, and it came back, and the judge decided he wanted to find more facts so that he could impose a higher sentence. But there were no more facts to be found. The only additional facts that the district court had at that point were these confidential PSRs that, again, the defendant had not seen nor had his attorney, and what the district court characterized as his admissions in his plea agreement, which the government now concedes were not in fact admissions in the plea agreement but actually allegations from the information which the defendant had refused to admit. So we don't have a regular case here where the court can say, oh, well, I've changed my mind. The court already had decided that the factual allegations in the PSR were not sustained, and the only information that the court utilized to change his mind is information that the government concedes is not appropriate for the court to even consider. And so we have these new facts that are utterly inadmissible, and those are the only things that make the difference between the no-rule enhancement and the two- or four-level enhancement. And just very briefly, I see I'm slightly over. This court should not affirm simply because Judge Wilson wants to impose a five-year sentence. If the court did that, it would render a guideline calculation utterly optional. A court could say, I'm going to impose five years, and if the guidelines are 12 to 18 or 24 to 30, it makes no difference to me. There would be no guideline appeals, and the entire process would undermine what the Supreme Court has emphasized is the importance of the guidelines in achieving uniformity in federal sentencing. Thank you. Thank you.
judges: Bastian, Pregerson, Callahan